UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CITIZENS FOR PENNSYLVANIA'S FUTURE, | CIVIL ACTION NO. _____ |
| Plaintiff | |
| v. | **FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, AND CIVIL PENALTIES** |
| PITTSBURGH WATER & SEWER AUTHORITY and CITY OF PITTSBURGH | |
| Defendants | |
| | **ELECTRONICALLY FILED** |

## COMPLAINT

Plaintiff Citizens for Pennsylvania's Future (PennFuture), by and through its undersigned counsel, hereby alleges as follows:

1.   This action is a citizen suit brought by Citizens for Pennsylvania's Future (PennFuture) against the Pittsburgh Water & Sewer Authority (PWSA) and the City of Pittsburgh (City) pursuant to Section 505 of the Federal Water Pollution Control Act (Clean Water Act), 33 U.S.C. § 1365, and Section 601 of the Pennsylvania Clean Streams Law (Clean Streams Law), 35 P.S. § 691.601, for violations of the Clean Water Act, 33 U.S.C. §§ 1251-1387, and the Clean Streams Law, 35 P.S. §§ 691.1-691.1001, in connection with discharges of stormwater from

a municipal separate storm sewer system (MS4) to the Allegheny River.  The action seeks injunctive and declaratory relief, as well as civil penalties.

2. This Court has subject matter jurisdiction over the claims set forth in this Complaint pursuant to 33 U.S.C. § 1365(a) (Clean Water Act citizen suit provision), 28 U.S.C. § 1331 (establishing federal question jurisdiction), and 28 U.S.C. § 1367 (establishing supplemental jurisdiction).  The relief requested is authorized under 33 U.S.C. §§ 1319 and 1365, 28 U.S.C. §§ 2201 and 2202, and 35 P.S. § 691.601.

3. In accordance with the Clean Water Act, 33 U.S.C. § 1365(b)(1)(A); 40 C.F.R. §§ 135.1-135.3, and the Clean Streams Law, 35 P.S. § 691.601(e), Plaintiff notified Defendants, the Administrator of the Environmental Protection Agency (EPA) and the Pennsylvania Department of Environmental Protection (PADEP) of its intent to sue in a letter dated April 11, 2012 (Notice Letter), sent by certified mail, return receipt requested. A true and correct copy of the Notice Letter is attached to this Complaint as Exhibit A.

4. More than sixty days have elapsed since the Notice Letter was served. Upon information and belief, the violations set forth in the Notice Letter are ongoing and likely to recur, and neither EPA nor PADEP has commenced a civil or criminal action in court to redress the ongoing violations.

5. Venue in the Western District of Pennsylvania is proper pursuant to 33 U.S.C. § 1365(c) and 28 U.S.C. § 1391(b), because the source of the violations is located in this District.

6. Plaintiff Citizens for Pennsylvania's Future (PennFuture) is a public interest membership organization that works to create a just future where nature, communities and the economy thrive.  PennFuture enforces environmental laws and advocates for the transformation of public policy, public opinion and the marketplace to restore and protect the environment and safeguard public health.  A significant focus of PennFuture's work relates to protecting and improving Pennsylvania's water resources.  PennFuture maintains a mailing address of 425 Sixth Avenue, Suite 2770, Pittsburgh, PA  15219-1853.

7. Defendant Pittsburgh Water & Sewer Authority (PWSA) is an authority created by the City of Pittsburgh under the Pennsylvania Municipal Authorities Act, 53 Pa.C.S. §§ 5601-5623.  PWSA maintains mailing addresses of 1200 Penn Avenue, Pittsburgh, PA  15222 and 441 Smithfield Street, Pittsburgh, PA  15222.

8. Defendant City of Pittsburgh (City) is a local government agency organized pursuant to the laws of the Commonwealth of Pennsylvania.  The City maintains a mailing address of 414 Grant Street, Pittsburgh, PA  15219.

9. Under the authority of the Federal Clean Water Act and the Pennsylvania Clean Streams Law, the Pennsylvania Department of Environmental Protection (PADEP) issued NPDES Permit Number PAI136133 (Permit), a NPDES Individual Permit for Stormwater Discharges from Small Municipal Separate Storm Sewer Systems (MS4s), to PWSA and the City on September 29, 2004, authorizing the discharge of stormwater from their MS4 into the Monongahela, Allegheny, and Ohio Rivers. A true and correct copy of the Permit is attached hereto as Exhibit B and incorporated herein by reference.

10. Although the Permit was set to expire on March 9, 2008, the permit remains in effect. *See* PADEP, *NPDES MS4 Information*, http://www.portal.state.pa.us/portal/server.pt/community/stormwater_management/10628/npdes_ms4%C2%A0information/669119 (last visited June 29, 2012) (listing the extensions PADEP has granted for MS4 permits throughout the past five years).

11. The Permit provides that PWSA and the City "must, during the term of this Individual Permit, implement a Stormwater Management Program that meets the following Minimum Control Measures: 1) Public Education and Outreach on Stormwater Impacts; 2) Public Participation and Involvement; 3) Illicit Discharge Detection and Elimination; 4) Construction Site Runoff Control; 5) Post-Construction Stormwater Management in New Development and

Redevelopment; and 6) Pollution Prevention and Good Housekeeping for Municipal Operations and Maintenance." Permit, p. 4.

12. The Permit requires that PWSA and the City "implement <u>and enforce</u>" certain programs under Minimum Control Measures 3, 4, and 5. *Id.*, pp. 4-5 (emphasis added).

13. The programs under Minimum Control Measures 3, 4, and 5 require permittees to, *inter alia*, "[e]nact an ordinance prohibiting non-stormwater discharges into the MS4," [e]nact an ordinance to require erosion and sediment controls, as well as sanctions to ensure compliance," and "[u]se an ordinance to address post-construction runoff from new development and redevelopment projects." *Id.*

14. In 2007, the City passed Bill Number 2007-1738, an "Ordinance amending and supplementing Title Ten: Building, Chapters 1001 and 1003, . . . to add the requirements of federal and state laws, regulations and standards regarding stormwater management for construction sites and for after construction activities have been completed," and Bill Number 2007-1739, an "Ordinance amending and supplementing Chapters 906, 922 and 924 of Title Nine, Zoning, . . . to include cross references to the . . . Chapter 1003 stormwater amendments, to provide for enforcement procedures and penalties for violations of Stormwater Management Ordinances or of approved Stormwater Management Site Plans and Stormwater

Best Management Practices and to conform certain Zoning Code amendments to the Storm Water amendments of Title Ten: Building and the Pittsburgh Zoning Code."

15. The City enacted these ordinances because, *inter alia*, "federal and state regulations require certain municipalities including the City and the [PWSA] to implement a program of stormwater controls and to obtain a permit for storm water discharges from its separate storm sewer systems under the [NPDES]," City of Pittsburgh, Bill No. 2007-1738, *available at* http://pittsburgh.legistar.com/, and because "the City has been obliged to amend certain ordinances in order to implement the requirements of the federal and state laws addressing stormwater management" and "the City is required by federal and state law to promulgate regulations for the enforcement of stormwater management ordinances, approved Stormwater Management Site Plans and Stormwater Management Best Practices, and to provide for penalties for violations thereof," Bill No. 2007-1739, *available at* http://pittsburgh.legistar.com/.

16. Two years later, the City passed Bill Number 2010-0567, an "Ordinance amending Sections 1003.01 and 1003.04 of Chapter 1003, Title X, of the Code of Ordinances of the City of Pittsburgh of the existing stormwater management requirements to provide more protective stormwater volume reduction standards and Low Impact Development (LID) strategies for planning

6

and construction of Publicly Funded Development and Publicly Funded Redevelopment projects." Bill No. 2010-0567, *available at* http://pittsburgh.legistar.com/. In passing Bill Number 2010-0567, the City effectively amended the programs that PWSA and the City are required to enforce under the Permit.

17. Under the ordinances that the City enacted pursuant to the Permit, regulated activities equal to or greater than ten thousand square feet in area or publicly funded developments or redevelopments must submit a Stormwater Management Site Plan ("SWM Site Plan") that meets the stormwater management standards designated for that particular regulated activity. *See* Pittsburgh Zoning Ordinance §§ 1003.04(a), 1003.04A(a).

18. The Buncher Company is constructing a redevelopment project (Buncher Project) in the "Strip District" of Pittsburgh that has received a $15 million Redevelopment Assistance Capital Program Grant from Governor Corbett. Governor's Budget Office, Redevelopment Assistance Capital Funding Program Grants Re-Released by Governor Corbett, at 13, *available at* http://www.portal.state.pa.us/portal/server.pt/document/1209944/web_site_posting_of_re-releases_pdf (last visited April 9, 2012).

19. As part of the Buncher Project, The Buncher Company commenced, without having submitted a SWM Site Plan to PWSA or the City, the construction

of a new roadway, which has been described as a "spine road," near the Allegheny River waterfront in an area from Eleventh Street to Fourteenth Street (Veteran's Bridge) (Eleventh Street Project).

20. After PennFuture issued its Notice Letter identifying the violation, the Buncher Company submitted to PWSA and the City a SWM Site Plan (Stormwater Management Report prepared by PVE Sheffler dated August 16, 2011, and revised April 23, 2012 and April 26, 2012) for the Eleventh Street Project, as well as a SWM Site Plan (Stormwater Management Report prepared by KU Resources dated April 2012, and revised May 2012) for an area from Fourteenth Street (Veteran's Bridge) to Twenty-First Street (Twenty-First Street Project).

21. On May 3, 2012, the City issued a letter (May 3 Consistency Letter) stating that the SWM Site Plan for the Eleventh Street Project "meets the City of Pittsburgh Stormwater Management Regulations (as contained in Titles 9 and 10 of the City Code)."

22. On May 30, 2012, the City issued a letter (May 30 Consistency Letter) stating that the SWM Site Plan for the Twenty-First Street Project "meets the City of Pittsburgh Stormwater Management Regulations (as contained in Titles 9 and 10 of the City Code)."

23. On June 12, 2012, PennFuture provided the City with a copy of a letter report prepared by an expert that PennFuture had retained to review the

SWM Site Plan for the Eleventh Street Project.  A true and correct copy of the letter report is attached hereto as Exhibit C and incorporated herein by reference.

24. The letter report outlines several ways in which the SWM Site Plan for the Eleventh Street Project fails to comply with the ordinances that PWSA and the City enacted under the programs that they are required to implement and enforce under the Permit.

25. In correspondence forwarding the letter report, PennFuture requested that the City withdraw or suspend the May 3 Consistency Letter and asked for a meeting with the City and The Buncher Company to discuss resolution of the deficiencies outlined in the letter report.  PennFuture also advised the City that it had engaged the same expert to review the SWM Site Plan for the Twenty-First Street Project.

26. The City has not withdrawn or suspended the May 3 Consistency Letter.

27. The City has declined to arrange a meeting with all of the parties necessary to resolve the deficiencies outlined in the letter report (and any that may be identified in any subsequent letter report prepared by the expert that PennFuture has retained to review the SWM Site Plan for the Twenty-First Street Project.)

28. PWSA and the City have violated and are in violation of the Permit and its condition requiring them to enforce ordinances that they enacted pursuant to their Stormwater Management Program.

29. The interests of PennFuture members are being harmed by these violations.

30. The relief requested in this action will wholly or partially redress the injury to PennFuture members who are being harmed by these violations.

31. PennFuture is bringing this action to protect the interests of its members who are being harmed by these violations, which interests are germane to the purposes of PennFuture.

## COUNT 1
## VIOLATIONS OF THE CLEAN WATER ACT

32. The averments contained in all preceding paragraphs of this Complaint are incorporated herein by reference.

33. Section 505 of the Clean Water Act authorizes citizen suits against any person alleged to be in violation of "an effluent standard or limitation under this chapter," 33 U.S.C. § 1365(a), which is defined to include "a permit or condition thereof issued under section 1342 of this title," *id.* § 1365(f).

34. PWSA and the City have violated and are in violation of the Permit and its condition requiring them to enforce ordinances that they enacted pursuant to their Stormwater Management Program.

## COUNT 2
## VIOLATIONS OF THE CLEAN STREAMS LAW

35. The averments contained in all preceding paragraphs of this Complaint are incorporated herein by reference.

36. Section 601 of the Clean Streams Law authorizes citizen suits against any person "alleged to be in violation of any . . . permit issued pursuant to this act." 35 P.S. § 691.601.

37. PWSA and the City have violated and are in violation of the Permit and its condition requiring them to enforce ordinances that they enacted pursuant to their Stormwater Management Program.

**WHEREFORE,** PennFuture respectfully requests that this Court grant the following relief:

a) Declare that PWSA and the City have violated and are in violation of the Clean Water Act and the Clean Streams Law for their failure to enforce the ordinances that they enacted pursuant to their Stormwater Management Program as they apply to the Buncher Project.

    b)    Enjoin PWSA and the City from allowing these violations to continue.

    c)    Order PWSA and the City to correct these violations.

    d)    Assess civil penalties against PWSA and the City for each day that they have violated and will continue to violate the Clean Water Act and Clean Streams Law.

    e)    Award PennFuture costs of litigation, including but not limited to reasonable attorney fees and expert witness fees.

    f)    Retain jurisdiction over this action to ensure compliance with the Court's decree.

    g)    Grant additional relief as justice may require.

Respectfully submitted,

s/ Brian Glass

_____
Brian Glass
PA 89405
Citizens for Pennsylvania's Future
1500 Walnut Street, Suite 502
Philadelphia, PA 19102
(215) 545-9694
(215) 545-9637 (fax)
glass@pennfuture.org

Date: July 9, 2012