IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CITIZENS FOR PENNSYLVANIA'S FUTURE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs | ) | Civil Action No. 12-943 |
| | ) | |
| PITTSBURGH WATER & SEWER AUTHORITY and CITY OF PITTSBURGH, | ) | |
| Defendants. | ) | |

MEMORANDUM  OPINION

MITCHELL, Magistrate Judge:

Presently before the Court is a motion to dismiss the complaint filed by defendant

Pittsburgh Water & Sewer Authority ("PWSA").  For reasons discussed below, PWSA's motion

to dismiss (Document No. 9) will be denied.

This is a citizens' suit brought by the plaintiff, Citizens For Pennsylvania's Future

("PennFuture"), against defendants PWSA and the City of Pittsburgh ("City") pursuant to

Section 505 of the Federal Water Pollution Control Act ("Clean Water Act"), 33 U.S.C. § 1365,

and Section 601 of the Pennsylvania Clean Streams Law ("Clean Streams Law"), 35 P.S.

§ 691.601.[1]  PennFuture alleges that the defendants are co-permittees of a permit issued by the

Pennsylvania Department of Environmental Protection ("PADEP") under the Clean Water Act

---

[1] PennFuture is a public interest membership organization that enforces environmental laws and advocates for the transformation of public policy to restore and protect the environment and safeguard public health.  A significant focus of its work relates to protecting and improving Pennsylvania's water resources (Complaint at ¶ 6).  Section 505 of the Clean Water Act authorizes a citizen suit against any person alleged to be in violation of "an effluent standard or limitation under this chapter", 33 U.S.C. § 1365(a), which is defined to include "a permit or condition thereof issued under section 1342 of this title", Id. § 1365(f).  Section 601(c) of the Clean Streams Law permits a citizen suit "to compel compliance with this act or any rule, regulation, order or permit issued pursuant to this act." 35 P.S. § 691.601(c).

and the Clean Streams Law; that they violated the terms and conditions of said permit in connection with discharges of stormwater from a municipal separate storm sewer system to the Allegheny River; and that the interests of PennFuture members are being harmed by these violations (Complaint at ¶¶ 9-26, 28-29, 34, 37).[2]

In the complaint, PennFuture asserts that under the authority of the Clean Water Act and the Clean Streams Law, PADEP issued to PWSA and the City a "NPDES Individual Permit for Stormwater Discharges from Small Municipal Separate Storm Sewer Systems (MS4s)" at NDPES Permit No. PA1136133 (the "Permit") (Complaint at ¶ 9 and Exhibit B attached to the complaint [which is a copy of the Permit]).  The Permit commenced on September 29, 2004 and authorized the discharge of stormwater from MS4s into the Monongahela River, Allegheny River and Ohio River (Id.).[3]

The Permit provides that PWSA and the City "must, during the term of this Individual Permit, implement a Stormwater Management Program that meets the following Minimum Control Measures:

> 1) Public Education and Outreach on Stormwater Impacts;
> 2) Public Participation and Involvement;
> 3) Illicit Discharge Detection and Elimination;
> 4) Construction Site Runoff Control;
> 5) Post-Construction Stormwater Management in New Development and Redevelopment; and
> 6) Pollution Prevention and Good Housekeeping for Municipal Operations and Maintenance."

(Complaint at ¶ 11, citing the Permit at p. 4).

The Permit also obligates PWSA and the City to "implement and enforce" certain

---

[2] In accordance with notice requirements of the Clean Water Act, 33 U.S.C. §1365(b)(1)(A), and the Clean Streams Law, 35 P.S. § 691.601(c), PennFuture notified the defendants, PADEP, and the Administrator of the Environmental Protection Agency of its intent to file a citizen suit in a letter dated April 11, 2012 (the "Notice Letter") (Complaint at ¶ 3 and Exhibit A attached to the complaint [which is a copy of the Notice Letter]).

[3] The Permit was set to expire on March 9, 2008, but it remains in effect (Complaint at ¶ 10).

programs under the aforesaid Minimum Control Measures 3, 4, and 5, including: "[e]nact an ordinance prohibiting non-stormwater discharges into the MS4", "[e]nact an ordinance to require erosion and sediment controls, as well as sanctions to ensure compliance", and "[u]se an ordinance to address post-construction runoff from new development and redevelopment projects." (Complaint at ¶¶ 12-13, citing the Permit at pp. 4-5).

In 2007 and 2010, the City enacted ordinances to comply with the Permit (Complaint at ¶¶ 14-16).[4]  PennFuture asserts that under the ordinances enacted by the City pursuant to the Permit, regulated activities equal to or greater than ten thousand square feet in area, or publicly funded developments or redevelopments must submit a Stormwater Management Site Plan ("SWM Site Plan") that meets the stormwater management standards designated for that particular regulated activity (Complaint at ¶ 17).  PennFuture complains that in a redevelopment project involving the Buncher Company, that did not occur.

According to PennFuture, the Buncher Company is constructing a redevelopment project in the City's "Strip District" (the "Project") that has received a $15 million Redevelopment Assistance Capital Program Grant from Governor Corbett (Complaint at ¶ 18).  As part of the Project, the Buncher Company commenced -- without having submitted a SWM Site Plan to PWSA or the City -- the construction of a new roadway, from Eleventh Street to Fourteenth Street, near the Allegheny River (the "Eleventh Street Project") (Id. at ¶ 19).  However, after PennFuture issued its aforementioned Notice Letter identifying the violation, the Buncher

---

[4] Specifically, PennFuture avers that in 2007, the City passed Bill Number 2007-1738, an "Ordinance amending and supplementing Title Ten: Building Chapters 1001 and 1003, … to add the requirements of federal and state laws, … regarding stormwater management for construction sites and for after construction activities…" (Complaint at ¶ 14). Also in 2007, the City passed Bill Number 2007-1739, an "ordinance amending and supplementing Chapters 906, 922 and 924 of Title Nine, Zoning, … to provide for enforcement procedures and penalties for violations of Stormwater Management Ordinances or of approved Stormwater Management Site Plans…" (Id.).  In 2010, the City passed Bill Number 2010-0567, an "Ordinance amending Sections 1003.01 and 1003.04 of Chapter 1003, Title X, of the [City's] Code of Ordinances… to provide more protective stormwater volume reduction standards and Low Impact Development strategies for planning and construction of Publicly Funded Development and … Redevelopment projects." (Id. at ¶ 16).

Company submitted a SWM Site Plan to PWSA and the City for the Eleventh Street Project, as well as for an area from Fourteenth Street to Twenty-First Street (the "Twenty-First Street Project") (Id. at ¶ 20).

On May 3, 2012, the City issued a letter stating that the SWM Site Plan for the Eleventh Street Project "meets the City of Pittsburgh Stormwater Management Regulations (as contained in Titles 9 and 10 of the City Code)" (the "May 3 Consistency Letter") (Id. at ¶ 21).  On May 30, 2012, the City issued a letter stating that the SWM Site Plan for the Twenty-First Street Project "meets the City of Pittsburgh Stormwater Management Regulations (as contained in Titles 9 and 10 of the City Code)." (Id. at ¶ 22).

PennFuture asserts that on June 12, 2012, it provided the City with a copy of a letter report prepared by an expert that it retained to review the SWM Site Plan for the Eleventh Street project (Id. at ¶ 23 and Exhibit C attached to the complaint [which is a copy of the letter report]). The letter report outlines several ways in which the SWM Site Plan for the Eleventh Street Project fails to comply with ordinances enacted pursuant to the Permit and programs that are to be implemented and enforced thereunder (Complaint at ¶ 24).

In correspondence forwarding the letter report, PennFuture requested the City to withdraw or suspend the May 3 Consistency Letter, and it asked for a meeting with the City and the Buncher Company to discuss resolution of the issues set forth in the letter report (Id. at ¶ 25).  However, the City has not withdrawn, nor suspended the May 3 Consistency Letter, and it declined to arrange a meeting with all parties to discuss the matter (Id. at ¶¶ 26-27).

In its two-count complaint, PennFuture contends that PWSA and the City violated the Clean Water Act (Count I) and the Clean Streams Law (Count II) by violating the Permit and its condition requiring them to enforce the ordinances enacted pursuant to the Stormwater

4

Management Program.  PennFuture seeks declaratory and injunctive relief, as well as civil

penalties against the defendants.[5]  The Court's federal question and supplemental jurisdiction are

invoked.

In response to the complaint, the City filed an answer and affirmative defenses, and

PWSA moved to dismiss the complaint pursuant to F.R.Civ.P. 12(b)(6).  In its motion to dismiss,

PWSA argues that the complaint fails to state a viable claim against it because: first, the plaintiff

asserts no instance in which PWSA failed to comply with the Permit, violated it, or failed to

enforce any ordinance or law; and second, PWSA is not required to review, approve or deny the

SWM Site Plans at issue, as it is the City's responsibility to do so in accordance with the City's

Code of Ordinances, Title X, Chapter 1003 (PWSA's motion to dismiss at ¶¶ 3-4).

In reviewing a Rule 12(b)(6) motion to dismiss, the Court "must accept all of the

complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler v.

UPMC, 578 F.3d 203, 210-11 (3d Cir. 2009), citing Ashcroft v. Iqbal, – U.S. – , 129 S.Ct. 1937,

1949 (2009).  The court "must then determine whether the facts alleged in the complaint are

sufficient to show that the plaintiff has a 'plausible claim for relief.'" Fowler, 578 F.3d at 211,

quoting Iqbal, 129 S.Ct. at 1950.  To be "plausible", a claimant's factual allegations must

"permit the court to infer more than the mere possibility of misconduct." Id.  That is, "a

complaint must do more than allege the plaintiff's entitlement to relief"; it "has to 'show' such

an entitlement with its facts." Fowler, 578 F.3d at 211.

Here, the complaint sets forth a plausible claim for relief against PWSA.  As recited

above, PADEP issued the NPDES Permit in question to PWSA and the City on September 29,

---

[5] Specifically, PennFuture seeks a declaration that the defendants violated the Clean Water Act and the Clean Streams Law in failing to enforce the ordinances enacted pursuant to their Stormwater Management Program as applied to the Buncher Project; an Order directing the defendants to correct these violations; an assessment of civil penalties against the defendants for each day that they violated and continue to violate the Clean Water Act and the Clean Streams Law; and reasonable attorney fees, expert witness fees, and the costs of litigation.

2004 (Complaint at ¶ 9 and Exhibit B attached to the complaint [which is a copy of the Permit]).

PWSA and the City are both listed as applicants on the Permit (Permit at p. 1).  The Permit

requires PWSA and the City -- as permittees – to fulfill certain obligations, including: implement

a Stormwater Management Program that meets various Minimum Control Measures; implement

and enforce programs under several of those Minimum Control Measures; and enact ordinances

to comply with the Permit's requirements (Complaint at ¶¶ 11-13 & Permit at pp. 4-5).

Under federal regulations governing NPDES permits for stormwater discharges from

small Ms4s, entities may jointly apply to be co-permittees under an individual permit, as

occurred here.  See, 40 C.F.R. § 122.33(b)(2)(iii) ("If allowed by your NPDES permitting

authority, you and another regulated entity may jointly apply…to be co-permittees under an

individual permit.").  Significantly, co-permittees may be held jointly and severally responsible

for compliance with a permit.  See, 40 C.F.R. § 122.35(a)(3), which provides in pertinent part:

> You remain responsible for compliance with your permit
> obligations if the other entity fails to implement the control
> measure (or component thereof).  Therefore, EPA encourages
> you to enter into a legally binding agreement with that entity
> if you want to minimize any uncertainty about compliance with
> your permit.

Further, under 40 C.F.R. § 122.36, if one co-permittee fails to comply with its permit

requirements, both co-permittees may be responsible for that failure.  See, 40 C.F.R. § 122.36,

which provides in relevant part:

> NPDES permits are federally enforceable.  Violators may be
> subject to the enforcement actions and penalties described in
> Clean Water Act sections 309(b), (c), and (g) and 505, or under
> applicable State, Tribal, or local law… If you are covered as a
> co-permittee under an individual permit or under a general permit
> by means of a joint Notice of Intent you remain subject to the
> enforcement actions and penalties for the failure to comply with
> the terms of the permit in your jurisdiction except as set forth in
> § 122.35(b).

6

The above federal regulations are incorporated by reference in Pennsylvania regulations governing stormwater discharges at 25 Pa. Code § 92a.32(a).  Based on the foregoing, PennFuture insists that PWSA cannot escape liability for violations of the Permit by claiming that the City, its co-permittee, was responsible for compliance with the Permit obligations.

Accepting as true the well-pleaded allegations in the complaint, PennFuture has stated a plausible claim for relief against PWSA.  Therefore, PWSA's motion to dismiss will be denied.

An appropriate Order will be entered.