IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CITIZENS FOR PENNSYLVANIA'S FUTURE, <br>       Plaintiff, <br><br> vs. <br><br> THE PITTSBURGH WATER AND SEWER AUTHORITY, <br> CITY OF PITTSBURGH and <br> THE BUNCHER COMPANY, <br>       Defendants. | Civil Action No. 12-943 |

**MEMORANDUM OPINION**

I.   **INTRODUCTION**

Presently before the Court is third party defendant's, The Buncher Company's, motion to dismiss [ECF No. 48] the Pittsburgh Water and Sewer Authority's third party complaint [ECF No. 47] pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, The Buncher Company's motion is granted.

II.   **BACKGROUND**

The instant third party-complaint arises from a citizen's suit brought by Citizens for Pennsylvania's Future ("PennFuture") against defendants Pittsburgh Water Sewer Authority ("PWSA") and the City of Pittsburgh ("City") pursuant to section 505 of the Federal Water Pollution Control Act ("Clean Water Act"), 33 U.S.C. §1365, and section 601 of the Pennsylvania Clean Streams Law ("Clean Streams Law"), 35 P.S. § 691.601. PWSA filed the instant third party complaint against The Buncher Company ("Buncher") alleging breach of contract for refusing to indemnify or defend PWSA in the underlying action.

1

a. *Underlying Complaint*

The underlying complaint alleges that PWSA and the City are co-permittees of a permit issued by the Pennsylvania Department of Environmental Protection ("PADEP") under the Clean Water Act and Clean Streams Law, that PWSA and the City violated the permit's terms and conditions in connection with discharges of stormwater from a municipal separate storm sewer system to the Allegheny River and that PennFuture's interests are harmed by such violations. Compl. [ECF No. 1] ¶¶ 9-26; 28-29; 34, 37. The permit authorized the City and PWSA to discharge storm water from small municipal separate storm sewer systems ("municipal sewers") into the Monongahela, Allegheny and Ohio Rivers. *Id*. at ¶ 9. Among other requirements, the permit required the City and PWSA to "[e]nact an ordinance prohibiting non-storm water discharges into the [municipal sewers;] . . . [e]nact an ordinance to require erosion and sediment controls, as well as sanctions to ensure compliance[;] . . . [and u]se an ordinance to address post-construction runoff from new development and redevelopment projects." *Id*. at ¶ 13 (quoting Ex. B [ECF No. 1-3] NDPES Permit No. PAI136133).

In 2007 and 2010, the City enacted ordinances to comply with the PADEP permit requirements. Compl. [ECF No. 1] at ¶¶ 14-16. According to PennFuture, the ordinances enacted by the City pursuant to the PADEP permit mandated the submission of a storm water management site plan for publically funded developments and/or redevelopment projects. *Id*. at ¶ 17. PennFuture alleges that a storm water management plan was not submitted with respect to The Buncher Company's ("Buncher's) redevelopment project in an area of the City known as the "Strip District." *Id*. at ¶ 18. Buncher received a gubernatorial grant to redevelop certain areas of the Strip District. *Id*. PennFuture alleges that Buncher commenced construction for the redevelopment project by constructing a new roadway from Eleventh Street to Fourteenth Street

("Eleventh Street Project") near the Allegheny River without first having submitted a storm water management plan to PWSA or the City. *Id*. at ¶ 19.

After PennFuture issued a notice letter to PWSA and the City identifying the violation, Buncher submitted a storm water management plan to PWSA and the City for the Eleventh Street Project and additionally for an area from Fourteenth Street to Twenty-First Street ("Twenty-First Street Project"). *Id*. at ¶ 20. Upon receipt of Buncher's storm water management plans, the City issued consistency letters stating that the storm water management plans submitted by Buncher for both the Eleventh Street and Twenty-First Street Projects met "the City of Pittsburgh Stormwater Management Regulations (as contained in Titles 9 and 10 of the City Code)." *Id*. at ¶ 21, 22. PennFuture alleges that the storm water management plans fail to comply with the ordinances enacted pursuant to the permit, and the City should not have issued the letters of consistency for the projects. *Id*. at ¶ 24. Specifically, PennFuture alleges that the plans violate applicable laws and ordinances because they fail to address the management and mitigation of stormwater impacts as required under the local zoning code and permit requirements. *See* Compl. Ex. C. Undated Meliora Environmental Design Letter to PennFuture [ECF No. 1-4]. Despite a request from PennFuture for the City to withdraw or suspend the consistency letter, it has not. Compl. [ECF No. 1] at ¶ 26.

PennFuture filed its complaint against the City and PWSA on July 9, 2012, alleging that PWSA and the City violated the Clean Water Act (Count I) and the Clean Streams Law (Count II) by violating the PADEP permit and by not enforcing the ordinances enacted pursuant to the storm water management program. In response to the complaint, the City filed an answer and affirmative defenses, and PWSA moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). On December 3, 2012, the Court denied PWSA's motion to dismiss

3

and found the complaint set forth a plausible claim for relief against PWSA. Memo. Op. [ECF No. 23] at 5, 7.

    b. *Third Party Complaint*

On March 26, 2013, PWSA filed a Third Party Complaint against Buncher alleging pursuant to the development agreement entered into between PWSA and Buncher, Buncher agreed to "indemnify, defend and hold harmless" PWSA "against any and all claims and causes of action, including attorneys' fees and costs of defense, arising out of or relating to the design and construction of sewers and water lines at Buncher's Strip District development" and therefore Buncher has the duty to defend and indemnify PWSA in connection with the underlying lawsuit. Third Party Compl. [ECF No. 47] at ¶ 20 (citing Ex. C [ECF No. 47-3] 5/16/2012 Development Agreement). Specifically, the indemnification provision in the development agreement between PWSA and Buncher states:

> <u>Indemnification</u>.  To the fullest extent permitted by law, the Developer agrees to indemnify, defend, and hold harmless the Authority and its employees, agents, and consultants ("Indemnitees") from and against any and all claims, demands, causes of action, judgments, damages and costs, including attorneys' fees and costs of defense (hereinafter "Claims and Damages") arising out of or relating to the design and construction of the Extended Facilities and Extended Storm Sewers, including but not limited to any repair costs and any incidental or consequential damages incurred by the Indemnitees due to any failure of the Developer to have the Extended Facilities, the Extended Storm Sewers or their connection to the Authority trunk lines and water distribution main installed and constructed in accordance with the degree of care and skill customary to the field or in accordance with the Plan approved by the Authority; provided, however, that the Developer shall have no obligation to defend or indemnify the Indemnitees against their negligence or willful misconduct. Provided, further, that the Developer's obligation to indemnify the Indemnitees against consequential damages shall not exceed the limit under the doctrine of sovereign immunity. Notwithstanding the foregoing, the Developer's obligations hereunder shall terminate on that date that the Developer completes the Project and the Authority accepts the Extended Facilities and either accepts the Extended Storm Sewers or releases that portion of the developer's bond or other performance security relating thereto.

Third Party Compl. Ex. C [ECF No. 47-3] 5/16/2013 Development Agreement at 6. PWSA alleges that because the underlying complaint filed by PennFuture "relates to the design of the [storm water management plans] that were submitted on behalf of Buncher to the City, and the PWSA, for the Eleventh Street" projects, Buncher is the "real party in interest" because it is the developer who designed and provided the storm water management plans at issue. Third Party Compl. [ECF No. 47] at ¶¶ 21-22. Therefore, PWSA asserts that it is entitled to "defense and indemnification from Buncher for this matter" and asserts a breach of contract claim against Buncher because it has denied PWSA's request for indemnification and defense. *Id*. at ¶¶ 30, 35. PWSA alleges that under the development agreement, Buncher agreed that the Eleventh Street Project "would be constructed in accordance with federal, state and municipal laws, ordinances and regulations" and has failed to do so. *Id*. at ¶ 32

On April 9, 2013, Buncher filed the instant motion to dismiss the third party complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Mot. to Dis. [ECF No. 48] at 1. Buncher claims that PWSA's complaint fails to state a claim for a breach of contract because Plaintiff has not shown an anticipatory breach, a claim for breach of contract is premature, and that the "indemnification obligations under the development agreement have not been triggered[;] . . . therefore Buncher's refusal to defend and indemnify [PWSA] at this time cannot form the basis of PWSA's breach of contract claim." Br. in Supp. of Mot. to Dis. [ECF No. 49] at 8-10.

### III.  JURISDICTION[1]

Although PWSA's Third Party Complaint fails to include the grounds for the court's jurisdiction, ignoring Federal Rule of Civil Procedure 8(a), this Court has the duty "to examine . . . subject matter jurisdiction at all stages of the litigation *sua sponte* if the parties fail to raise the

---

[1]   All parties have consented to jurisdiction before a United States Magistrate Judge; therefore the Court has the authority to decide dispositive motions, and to eventually enter final judgment. *See* 28 U.S.C. § 636 *et seq.*

issue." *U.S. Express Line, Ltd. v. Higgins*, 281 F.3d 383, 388-89 (3d Cir. 2002) (extending this duty to removal cases). *See also Gonzales v. Thaler*, -- U.S. --, 132 S.Ct. 641, 648 (2012); *United States v. Cotton*, 535 U.S. 625, 630 (2002). Here, the Court must determine whether to employ its supplemental jurisdiction because although the original complaint has jurisdiction under 28 U.S.C. § 1331, the third party complaint has no independent basis for jurisdiction.

28 U.S.C. § 1367(a) provides:

> [I]n any and all civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form party of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a). In *Pennsylvania R.R. Co. v. Erie Warehouse Co.*, 302 F.2d 843 (3d Cir. 1962), "[t]he original claim was within a federal statute[,] . . . [b]ut the third-party claim neither arose under a federal statute nor was asserted between citizens of different states. Independently considered, it was not within federal jurisdiction." *Id.* at 844. However, the United States Court of Appeals for the Third Circuit determined that ancillary jurisdiction over the third party complaint was a proper and permissible exercise of federal jurisdiction.[2] *Id.* at 845 (joinder of non-federal claims against third parties under Federal Rule of Civil Procedure 14 does not violate Federal Rule of Civil Procedure 82 that no Rule shall be construed to extend or limit the statutory jurisdiction of the federal courts). "Ancillary jurisdiction evolved primarily to protect defending parties, or others whose rights might be adversely affected if they could not air their

---

[2]  Prior to the enactment of section 1367, a district court could only exercise jurisdiction over claims that did not otherwise satisfy the requirements of sections 1331 and 1332 by applying the judicially created principles of ancillary or pendent jurisdiction. Section 1367 is essentially the codification of both pendent and ancillary jurisdiction, therefore it is appropriate to consider cases examining the scope of ancillary jurisdiction to determine whether to exercise supplemental jurisdiction under section 1367. *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 300-01 (3d Cir. 1998).

claims in an ongoing federal-court action." *Exxon Mobil Corp. v. Allapattah Servs. Inc.*, 545 U.S. 546, 579 (2005).

Here, the underlying action arises out of federal question jurisdiction under the Clean Water Act 33 U.S.C. § 1365. However, the third-party complaint merely alleges one breach of contract claim that is not independently within federal jurisdiction, as it does not assert a federal question, nor does it qualify under 28 U.S.C. § 1332 because the third party plaintiff and third party defendant are residents of the same state.[3] However, the court may exercise its supplemental jurisdiction under *Erie Warehouse* and its progeny. *See Nationwide Mut. Fire Ins. Co., v. T & D Cottage Auto Parts and Service, Inc.*, 705 F.2d 685, 688 (3d Cir. 1983) ("mootness occurring after the filing of a complaint and the counterclaim does not rob a court of ancillary jurisdiction over the counterclaim is consistent with the doctrine that power to adjudicate an ancillary claim generally survives the defeat of the principal claim on the merits"). Therefore, the Court has supplemental jurisdiction over the third party complaint under 28 U.S.C. § 1367.

## IV. STANDARD OF REVIEW

To survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The reviewing court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper where the factual allegations of the complaint conceivably fail to raise, directly or

---

[3] "The PWSA is a public municipal authority created under the Municipalities Authorities Act of 1945, as amended, under the law of the Commonwealth of Pennsylvania, with its principal place of business at 1200 Penn Avenue, Penn Liberty Plaza, I, Pittsburgh, Pennsylvania, 15222. The Buncher Company ("Buncher") is Pennsylvania corporation with its principal place of business located at 1300 Penn Avenue, Suite 300, Pittsburgh, Pennsylvania 15222." Third Party Compl. [ECF No. 47] at ¶¶ 1-2.

inferentially, the material elements necessary to obtain relief under a legal theory of recovery. *Twombly*, 550 U.S. at 561 (citations omitted).  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (2009) (citing *Twombly*, 550 U.S. at 555).  Under this standard, civil complaints "must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal quotations omitted).  A court in making this determination must ask "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Twombly*, 550 U.S. at 583 (quoting *Scheuer v. Rhoads*, 416 U.S. 232, 236 (1974) (internal quotations omitted)).

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court "may consider documents attached to the complaint." *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 32 (3d Cir. 2011) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).  Although a district court may not generally consider matters extraneous to pleadings when ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), it may consider documents <u>integral to or explicitly relied upon</u> in a complaint without converting the motion to dismiss into a motion for summary judgment. *West Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97 (3d Cir. 2010); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

V.   **ANALYSIS**

  *a.*   *Duty to Indemnify*

As a preliminary matter, PWSA concedes Buncher's argument that because of the preliminary stage of the underlying litigation, it has no duty to indemnify. *See* PWSA Br. in Op. of Mot. to Dismiss [ECF No. 51] at 2 ("[I]t is agreed that the duty to indemnify does not arise

until the party pays a claim or a verdict for damages is obtained."). This assertion is consistent with applicable law. *See Step-Saver Data Sys. Inc. v. WYSE Tech.*, 912 F.2d 643, 647 (3d Cir. 1990); *TDY Indus., Inc. v. Nat'l Freight Transp. Inc.*, 2009 WL 691947, at *11 (W.D.Pa. March 12, 2009) ("As a general rule, a court entertaining a declaratory judgment action in an insurance coverage case should refrain from determining the insurer's duty to indemnify until the insured is found liable for damages in the underlying action."); *Whole Enchilada Inc. v. Travelers Prop. Cas. Co. of Am.*, 581 F.Supp.2d 677, 695 (W.D.Pa. 2008) ("An insurer will have a duty to indemnify when liability against the insured is conclusively established."). Therefore, PWSA's indemnification claim is dismissed without prejudice.

 b.   *Duty to Defend*

The duty to defend "is separate and distinct from the duty to indemnify." *Maule v. Philadelphia Media Holdings, LLC*, 2010 WL 914926, at *? (E.D.Pa. DATEEE 2010). Under Pennsylvania law, the "duty to defend is broader than the duty to indemnify, since it applies not only to claims that 'are or reasonably appear to be within the scope of the indemnity obligation but also to claims that arguably are or might be found within the scope." *Bowman v. Am. Homecare Supply, LLC*, 2008 WL 4787558, at *6 (E.D.Pa. Oct. 30, 2008) (quoting S*tep-Saver Data Sys., Inc., v. WYSE Tech.*, 912 F.2d 643, 650 (3d Cir. 1990)). The duty to defend is triggered "if the underlying complaint avers facts that would support indemnification under the agreement[.]" *Bowman*, 2008 WL 4787558, at *6 (quoting *Mace v. Atl. Ref. Mktg. Corp.*, 785 A.2d 491, 500 (Pa. 2001)).

Under Pennsylvania law, the construction of an indemnity provision or contract "is a question of law for the court to decide." *Jacobs Constructors, Inc. v. NPS Energy Servs., Inc.*, 264 F.3d 365, 371 (3d Cir. 2001) (applying Pennsylvania law) (citations omitted). "It is a well-

established principle that an indemnity clause is to be construed against the party seeking indemnification, 'because the nature and purpose of any indemnity agreement involves the shifting and voluntary assumption of legal obligations.'" *Invensys Inc. v. Am. Mfg. Corp.*, 2005 WL 600297, at *4 (E.D.Pa. March 15, 2005) (quoting *Jacobs*, 264 F.3d at 373). Thus, because indemnity clauses are construed against the party seeking indemnification, "a duty to defend will only be found where the parties used clear, unambiguous language." *Invensys Inc.*, 2005 WL 600297, at *4 (citing *Jacobs*, 264 F.3d at 373).

In the instant case, the Court must determine whether the underlying complaint alleging that the City and PWSA violated the Clean Water Act and the Clean Streams Law by violating a permit issued by the PADEP is encompassed by the indemnification provision of the Development Agreement between the PWSA and Buncher. The Court finds that it does not.

PennFuture's complaint alleges two causes of action against the City and PWSA: a violation of the Clean Water Act and the Clean Streams Law stemming from the violation of PADEP's permit "and its condition requiring them to enforce ordinances that they enacted pursuant to their Stormwater Management Program." Compl. [ECF No. 1] at ¶¶ 33-37. The indemnification provision provides that Buncher will defend against causes of action

> arising out of or relating to the design and construction of the Extended Facilities[4] and the Extended Storm Sewers,[5] including but not limited to any repair costs and any incidental or consequential damages incurred by [PWSA] due to any failure of [Buncher] to have the Extended Facilities, the Extended Storm Sewers or their connection to the Authority trunk lines and water distribution main installed and constructed in accordance with that

---

[4] The Development Agreement designates "Extended Facilities" as "the Developer is required to construct main sanitary sewers and water lines throughout the Property providing connecting points for the subdivided properties within the Property." 5/16/2012 Development Agreement [ECF No. 47-3] at 2.

[5] The Development Agreement designates "Extended Storm Sewers" as "the Developer plans to construct storm sewers pursuant to the Plan providing connecting points to the Authority's existing storm sewer system." 5/16/2012 Development Agreement [ECF No. 47-3] at 2.

> degree of care and skill customary to the field or in accordance with the Plan approved by the Authority[.]

5/16/2012 Development Agreement [ECF No. 47-3] at ¶ 9. The allegation that the City and PWSA violated a permit issued to them by the PADEP to construct the municipal sewers is not the type of claim encompassed by the limited indemnification provision. PennFuture's complaint does not allege design defects or construction claims of the sewers or redevelopment project, it merely asserts that PWSA and the City violated the PADEP's permit's terms and conditions by either not submitting or submitting an improper storm water management site plan. The indemnification provision covers the construction and design of sewer and water lines, not litigation arising from the permits issued by the PADEP or the development agreement itself. Reading the indemnity provision in accordance with its plain meaning, Buncher does not have a duty to defend PWSA for the claims brought against it by PennFuture. Accordingly, Buncher has not breached the development agreement for refusing to defend PWSA in the underlying action, because it has no duty to defend PWSA. Therefore, PWSA's claim for Buncher to provide a defense is dismissed with prejudice.

## VI. CONCLUSION

For the foregoing reasons, The Buncher Company's motion to dismiss PWSA's third party complaint is granted. An appropriate Order follows.


DATED: June 10, 2013

By the Court,

s/Robert C. Mitchell
ROBERT C. MITCHELL
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CITIZENS FOR PENNSYLVANIA'S FUTURE, ) | |
| Plaintiff, ) | |
| vs. ) | Civil Action No. 12-943 |
| THE PITTSBURGH WATER AND SEWER AUTHORITY, CITY OF PITTSBURGH and THE BUNCHER COMPANY, ) | |
| Defendants. ) | |

**O R D E R**

AND NOW, this 10th day of June, 2013, it is ORDERED that The Buncher Company's Motion to Dismiss [ECF No. 48] Pittsburgh Water and Sewer Authority's Amended Third Party Complaint [ECF No. 47] is GRANTED.

s/Robert C. Mitchell
ROBERT C. MITCHELL
United States Magistrate Judge