IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CITIZENS FOR PENNSYLVANIA'S )
FUTURE, )
          Plaintiff, )
)
   vs. )   Civil Action No. 12-943
)
THE PITTSBURGH WATER AND )
SEWER AUTHORITY, )
CITY OF PITTSBURGH and )
THE BUNCHER COMPANY, )
          Defendants. )

**MEMORANDUM OPINION**

I.     **INTRODUCTION**

Presently for disposition before the Court is Defendants', The Pittsburgh Water and Sewer Authority ("PWSA"), and the City of Pittsburgh's, Motion for Summary Judgment. [ECF No. 58]. For the following reasons, the Defendants' motion is granted in part and temporarily denied in part.[1]

II.     **BACKGROUND**

The instant action is a citizen suit brought by Plaintiff, Citizens for Pennsylvania's Future ("PennFuture") and against Defendants the Pittsburgh Water and Sewer Authority ("PWSA") and the City of Pittsburgh ("the City"). PennFuture alleges that defendants violated section 505

---

[1]     All parties have consented to jurisdiction before a United States Magistrate Judge; therefore, the Court has authority to decide dispositive motions, and to eventually enter final judgment. *See* 28 U.S.C. § 636 et seq.; Consent to Trial/Jurisdiction by United States Magistrate Judge by City of Pittsburgh [ECF No. 19]; Consent to Trial/Jurisdiction by United States Magistrate Judge by Citizens for Pennsylvania's Future [ECF No. 18]; Consent to Trial/Jurisdiction by United States Magistrate Judge by Pittsburgh Water & Sewer Authority [ECF No. 17].

1

of the Federal Water Pollution Control Act ("Clean Water Act"), 33 U.S.C. § 1365 and section 601 of the Pennsylvania Clean Streams Law ("Clean Streams Law"), 35 P.S. § 691.601 by failing to enforce ordinances enacted pursuant to those laws in connection with discharges of storm water from a municipal separate storm sewer system to the Allegheny River.

PennFuture is a public interest membership organization that seeks to enforce environmental laws and advocates for the transformation of public policy to restore and protect the environment and safeguard the public health.

*NPDES Permit*

On or about September 29, 2004, the Pennsylvania Department of Environment Protection ("DEP") issued the City and the PWSA a National Pollutant Discharge Elimination System ("NPDES") Permit for stormwater discharges from small municipal separate storm sewer systems (MS4s). Statement of Material Fact [ECF No. 60] at ¶ 1.[2] The NPDES Permit generally authorized the City and PWSA to discharge stormwater from their MS4s into the Monongahela, Allegheny and Ohio Rivers. *Id.* The permit also required that defendants "implement a stormwater management program approved by [the DEP] . . . to reduce the discharge of pollutants from its [MS4s] to the maximum extent practicable . . . with the goal of protecting water quality and satisfying the appropriate water quality requirements of the federal Clean Water Act." NPDES Permit No.: PAI136133 [ECF No. 1-3] at 4.

To achieve this purpose, the permit required that the stormwater management program implement six "minimum control measures" to control stormwater by:

> (1) establishing a program of public education and outreach about the impacts of stormwater pollution on water bodies,
>
> (2) providing for public participation in the development and

---

[2] All facts are uncontested unless otherwise stated.

> implementation of a stormwater management program,
>
> (3) establish and enforce a program to detect and eliminate illicit discharges to the MS4,
>
> (4) establishing and enforcing a program to reduce pollution from construction site stormwater runoff to the MS4,
>
> (5) establishing and enforcing a program to reduce pollution from post-construction stormwater runoff to the MS4 at new and redeveloped construction sites, and
>
> (6) establishing a program of reducing pollution from municipal operations through employee training and good housekeeping procedures.

*Id.* at 4.

The DEP also set forth a model stormwater management program it deemed the "Protocol" which permittees could either adopt to conform to the requirements of the permit, or, the permitee could develop its own stormwater management program, provided it was approved by the DEP. *Id.* According to the permit requirements, minimum control measures 3, 4, and 5 required that defendants enact ordinances to implement those portions of the stormwater management program.[3]

In August 2003, the DEP created a stormwater ordinance to guide municipalities to meet the permit requirements. Pl.'s Br. in Op. of Mot. for Summ. J. [ECF No. 65] at 4. However, it was not required that the DEP's model ordinance be adopted verbatim. *Id.*

In 2007, the City amended Title X of the City Code to implement a stormwater

---

[3] Specifically, the permit required as to illicit discharge detection and elimination, the enactment of "an ordinance prohibiting non-stormwater discharges into the MS4" and implementation of "appropriate enforcement procedures and actions for the ordinance." NPDES Permit No.: PAI136133 [ECF No. 1-3] at 4. As to construction site runoff control, the permit required enactment of an ordinance "to require erosion and sediment controls, as well as sanctions to ensure compliance." *Id.* at 5. As to post-construction stormwater management in new development and redevelopment, the permit required enactment of an ordinance to "address post-construction runoff from new development and redevelopment projects[.]" *Id.* at 6.

management program that complied with the NPDES Permit. Defs.' Statement of Material Facts [ECF No. 60] at ¶ 6; *See also* Pl.'s Appendix [ECF No. 69] at 65 (copy of City of Pittsburgh Zoning Code ("2007 City Code") § 1001.04(b) (2007)). The 2007 Ordinance differed from the model ordinance fashioned by the DEP in some respects. First, the City's ordinance contained a definition of "Green Infrastructure" and required its use at developments to control stormwater wherever "applicable and feasible." 2007 City Code §§ 1003.01(gg), 1003.06(a)(2)(J). The term "Green Infrastructure" was defined as "[t]he use of natural systems to help absorb, infiltrate, evaporate or re-use stormwater runoff, including but not limited to rain barrels and cisterns, roofs covered with vegetation and plantings, tree boxes, rain gardens and pocket wetlands. *See* 2007 City Code § 1003.01(gg). The DEP model ordinance had no such requirement.

Second, both the 2007 City ordinance and the DEP model ordinance described "low impact development practices" which promote the use of natural hydrologic conditions in development designs to minimize post-development runoff rates and volume rather than using the tradition approach of removing runoff from sites as quickly as possible. While the DEP model ordinance "encouraged" the use of low impact development practices, the City's enacted ordinance "required" their use in site design "whenever practical" and further required that a qualified professional certify any claim that low impact development practices were not practical. 2007 City Code § 1003.04(b)(4).

The City amended the ordinance in 2010 to "provide more protective stormwater volume reduction standards and low impact development . . . strategies for planning and construction of" publically funded development and redevelopment projects.[4] *See* Pl.'s Br. in Op. of Mot. for

---

4  The ordinance added the definitions of "publically funded development" and "publically funded redevelopment." The ordinance defines "[P]ublically Funded Development . . . as "[a]ny development funded in whole or in part by public monies provided or approved by the City in

4

Summ. J. [ECF No. 65] at 5; *see also* Pl.'s Appendix [ECF No. 69 at 107] (copy of City of Pittsburgh Zoning Code ("2010 City Code") §§ 1003.01(gg) and 1003.06(a)(2)(J) (2010)). In amending Title X, the City required the use of low impact development practices and green infrastructure on publically funded development and redevelopment projects to the "maximum extent technically feasible." *Id.* Further, to substantiate a claim that the use of low impact development practices are unfeasible, the developer must provide the opinion of a qualified professional and must incorporate that opinion into the stormwater site management plan. *Id.* Further, the reviewing body, must approve of the demonstration of technical unfeasibility and without such approval, the developer must incorporate low impact development practices to the maximum extent technically feasible. *See* 2010 City Code § 1003.04A(b)(4).[5]

*Strip District Development*

The Buncher Company ("Buncher") was given a government grant to redevelop an area of the City known as the "Strip District." According to the Plaintiff, the ordinances enacted by the City pursuant to the NPDES Permit required the submission of a stormwater management site plan for the Strip District redevelopment project and Buncher failed to submit a stormwater

---

the form of any grant, loan that is forgiven or discounted below the market rate over the life of the loan, bond financing, infrastructure improvements related to a project, below-market sale or lease of property, or other form of at least one-million ($1,000,000) but shall not include any educational or training grant. For organizations, controlling organizations, and/or organizations having an identity of interest with the assistance recipient shall be treated as a single entity. Market value shall be determined by a third party that shall not include the City or the City subsidy recipient." "Publically Funded Redevelopment" is defined as "Any land-disturbing activity that results in the creation, addition, or replacement of 500 square feet or more of impervious surface area at a Publically Funded Development." 2010 City Code §§ 1003.01 and 1003.04 [ECF No. 69 at 107].

[5] The "Review Body" is defined as "[t]he entity (City Council, Planning Commission, Zoning Board of Adjustment, Zoning Administrator, Planning Director, department head or Code Official) that is authorized to approve or deny or to recommend approval or denial of an application, plan or permit required under this Chapter." 2010 City Code § 1003.01(aaa) [ECF No. 59 at 112].

5

management plan as to the redevelopment project.

*Notice Letter*

On April 11, 2012, PennFuture sent a Notice of Intent to Sue for Violations of the Federal Clean Water Act and the Pennsylvania Clean Streams Law to defendants, among others required by statute. The letter sent by PennFuture provides in pertinent part:

> This letter provides notice that Citizens for Pennsylvania's Future ("PennFuture") intends to file a citizen suit against the Pittsburgh Water & Sewer Authority ("PWSA") and the City of Pittsburgh ("the City") for violations of the Federal Clean Water Act, 33 U.S.C. §§ 1251-1387, and the Pennsylvania Clean Streams Law, 35 P.S. §§ 691.1-691.1001. These violations arise from the continuing failure of PWSA and the City to enforce certain ordinances against The Buncher Company that PWSA and the City are required to enforce pursuant to the conditions of their NPDES Individual Permit for Stormwater Discharges from Small Municipal Separate Storm Sewer Systems ("MS4s").
>
> …
>
> PennFuture provides this notice pursuant to 33 U.S.C. § 1365(b)(1)(A), 40 C.F.R. §§ 135.1-153.3, and 35 P.S. § 691.601(e).
>
> …
>
> The Buncher Company has commenced the construction of a new public roadway, which has been described as a "spine road" near the Allegheny River waterfront between 11th Strreet and Veterans Bridge in the "Strip District" of Pittsburgh ("the site"). . . . The public roadway currently being constructed is part of a larger redevelopment project of the Strip District that has received a $15 million Redevelopment Assistance Capital Program Grant from Governor Corbett. . . .
>
> Upon information and belief, The Buncher Company did not submit a SWM [stormwater management] Site Plan to PWSA or the City for the roadway project. Further, upon information and belief, The Buncher Company is not complying with the stormwater management standards applicable to publicly funded development and publicly funded redevelopment in its development of the roadway project.

> By not requiring The Buncher Company to submit a SWM Site Plan for the roadway project and by not requiring The Buncher Company to comply with the stormwater management development of the roadway project, PWSA and the City are not enforcing the ordinances that they are required to enforce under PAI136133 and therefore are in continuing violation of the permit.

PennFuture Notice Letter [ECF No. 1-2].

After plaintiff issued the notice letter, Buncher submitted a stormwater management plan to PWSA and the City for the 11th Street Project and additionally for an area from 14th Street to 21st Street (the "21st Street Project"). Upon receipt of Buncher's stormwater management plans for both projects, the City issued consistency letters stating that Buncher's stormwater management plans conformed to the regulations set forth in the City code.

Plaintiff alleges that Buncher's stormwater management plans do not comply with the City's ordinances enacted pursuant to the permit and the City should not have issued the letters of consistency for the projects. Specifically, Plaintiff alleges that the plans violate applicable laws and ordinances because they fail to address the management and mitigation of stormwater impacts. Although Plaintiff requested that the City withdraw or suspend the consistency letters, it has not.

No action was taken by the DEP or the defendants after plaintiff submitted the notice letter, and plaintiff timely filed suit. Plaintiff's complaint sets forth two causes of action for a violation of the Clean Water Act and the Clean Streams Law by violating the DEP permit and by not enforcing the ordinances enacted pursuant to the stormwater management program.

### III.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(c). A moving party is entitled to summary judgment if he demonstrates that "the nonmoving party has failed to make a sufficient showing of an essential element of [his] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party bears the burden of adducing palpable evidence "establishing that there is a genuine factual dispute for trial" and may not merely rely upon "bare assertions or conclusory allegations" to survive summary judgment. *Hogan v. Twp. of Haddon*, 278 Fed.App'x 98, 101 (3d Cir. 2008) (citing *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982)). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied [only] when there is a genuine issue of material fact." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## IV. ANALYSIS

Section 505 of the Clean Water Act authorizes a citizen suit against any person alleged to be in violation of "an effluent standard or limitation under this chapter" which includes "a permit or condition thereof issued under section 1342 of this title." 33 U.S.C. §§ 1365(a), (f). Similarly, section 601(c) of the Clean Streams Law permits a citizen suit "to compel compliance with this act or any rule, regulation, order or permit issued pursuant to this act." 35 P.S. § 691.601(c).

Defendants move for summary judgment for two reasons: "(1) the 2010 Ordinance upon which Plaintiff relies is not incorporated into, a condition of, or requirement for compliance of the Permit at issue in this case and (2) this Court does not have jurisdiction over Plaintiff's claims relating to the 'Twenty-First Project" because the project was not included [in] Plaintiff's Notice Letter and the Complaint does not allege any violation(s) relating to it." Defs.' Br. in

Supp. of Mot. for Summ. J. [ECF No. 59] at 1.[6]

Plaintiff responds that the 2010 Ordinance applies to the permit and can be enforced against defendants, and that defendants had notice of the alleged violations occurring at the 21st Street Project because defendants were provided notice as to the general standard being violated. Pl.'s Br. in Op. to Defs.' Mot. for Summ. J. [ECF No. 65] at 7-21. The Court will address each argument in turn.

*2010 Ordinance*

In support of their contentions that the 2010 ordinance does not apply to the permit, defendants cite to no legal authority to support their claims. Likewise, plaintiff offers no legal authority in response to defendants' argument. Because the Court cannot make a determination as to the applicability of the 2010 Ordinance without guidance from any authority on this issue or any substantiated legal argument, summary judgment as to this claim is temporarily denied. The parties are to follow the briefing order set forth below.

*21st Street Project*

Defendants argue that because plaintiff did not explicitly refer to the 21st Street Project in its notice letter, and because the complaint does not allege any violations relating to it, summary judgment should be granted in its favor.

In its notice letter, Plaintiff alleges that the City and PWSA were in violation of the permit because it did not require Buncher to submit a stormwater management plan for the roadway project and did not require Buncher to conform to the stormwater management standards by not enforcing the applicable ordinances. While the notice letter only explicitly refers to the "roadway project" as the 11th Street Project, the Court needs to determine whether

---

[6] The City was permitted to join in all of PWSA's arguments for summary judgment. *See* Text Order of 10/15/2013 granting Motion for Joinder as to Motion for Summary Judgment.

the letter put defendants on notice of alleged violations at the 21st Street Project.

The Clean Water Act permits a citizen to bring suit in federal court against a person or entity who is alleged to be in violation of "an effluent standard or limitation" under the Act, or "an order issued by the Administrator or a State with respect to such a standard or limitation." 33 U.S.C. § 1365(a)(1). However, a citizen must first give notice to the alleged violator before filing suit. Under 33 U.S.C. § 1365(b)

> No action may be commenced –
>
> > (1) Under subsection (a)(1) of this section –
> >
> > > (A) prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order.

33 U.S.C. § 1365(b).

The United States Supreme Court has noted that the requirement for a citizen to first serve notice upon alleged violation serves two purposes:

> First, notice allows Government agencies to take responsibility for enforcing environmental regulations, thus obviating the need for citizen suits. In many cases, an agency may be able to compel compliance through administrative action, thus eliminating the need for any access to the courts. Second, notice gives the alleged violator "an opportunity to bring itself into compliance with the Act and thus likewise render unnecessary a citizen suit."

*Hallstrom v. Tillamook Cnty*, 493 U.S. 20, 29 (1989) (quoting *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60 (1987) (internal citations omitted)).

In making the determination of whether alleged violations that were not included in a notice letter otherwise gave the alleged violator implied notice of its violations, the Court of Appeals for the Third Circuit stated:

> While there is no doubt that such detailed information is helpful to the recipient of a notice letter in identifying the basis for the citizen suit, such specificity is not mandated by the regulation. The regulation does not require that the citizen identify every detail of a violation. Rather, it states that "[n]otice regarding an alleged violation . . . shall include sufficient information *to permit the recipient to identify*" the components of an alleged violation.

*Pub. Interest Research Grp. of New Jersey, Inc. v. Hercules, Inc*., 50 F.3d 1239, 1247-48 (3d Cir. 1995) (quoting 40 C.F.R. § 135.3(a) (emphasis in original)). Under this analysis, the citizen need only "provide enough information to enable the recipient, *i.e.*, [the defendants], EPA and/or the State, to identify the specific effluent discharge limitation which has been violated, including the parameter violated, the date of the violation, the outfall at which it occurred, and the person or persons involved." *Id*. The Third Circuit reasoned that because in investigating one aspect of a violation, other aspects of that violation become apparent through the investigation. *Id*. Thus, "notice of one facet of an effluent infraction is sufficient to permit the recipient of the notice to identify other violations arising from the same episode." *Id*.

Here, plaintiff is claiming a violation of the permit because the defendants were not enforcing the ordinance by not requiring Buncher submit a stormwater management plan, and then those subsequently submitted and approved plans were not adequate to comply with the ordinance requirements. While plaintiff does not allege the same violations as in *Hercules*, the reasoning still applies.

The Court finds that there was enough detailed information in the notice letter to allow defendants to identify the components of the alleged violation. That the 11th Street Project did not conform with the applicable ordinances by Buncher not submitting an adequate storm water management plan, in addition to a reference of the entire construction project put defendants on notice of similar additional violations of the project as a whole. The notice letter gave adequate

11

notice that stormwater management plans were either not submitted for the project or inadequate under the ordinances. Further, nothing would be gained from requiring plaintiff to issue another notice letter as to the 21st Street Project for the same violation regarding the same redevelopment project. *See generally Hercules*, 50 F.3d at 1248. Thus, the Court finds that notice of the inadequacy or non-existence of a stormwater management plan at one site is sufficient notice of that same alleged violation of the construction project as a whole where the entire project is referenced in the notice letter.

While the Court finds that defendants were on adequate notice of the 21st Street Project, it must be determined whether defendants are entitled to summary judgment as to this alleged violation. Defendants argue that plaintiff has not alleged any violation regarding the 21st Street Project, and therefore it is entitled to summary judgment. Plaintiff did not respond to this argument.

There is no evidence of record that a violation has occurred at the 21st Street Project. The only evidence of record in support of any violation of the Strip District redevelopment is a report by Meloria Environmental Designs. *See* Report of Meloria Environmental Designs [ECF No. 1-3]. This report submitted by plaintiff only pertains to alleged violations of the 11th Street Project. *See* Compl. [ECF No. 1] at ¶ 23 ("On June 12, 2012, PennFuture provided the City with a copy of a letter report prepared by an expert that PennFuture has retained to review the [stormwater management] Site Plan for the Eleventh Street Project."). Plaintiff has offered no other evidence that the 21st Street Project has violated any applicable ordinances; therefore defendants are entitled to summary judgment as to this claim.

V. **CONCLUSION**

Defendants' motion for summary judgment is granted in part and temporarily denied in

part as set forth above. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CITIZENS FOR PENNSYLVANIA'S  )
FUTURE,                      )
      Plaintiff,            )
                             )
  vs.                        )   Civil Action No. 12-943
                             )
THE PITTSBURGH WATER AND     )
SEWER AUTHORITY,             )
CITY OF PITTSBURGH and       )
THE BUNCHER COMPANY,         )
      Defendants.           )

## **O R D E R**

AND NOW, this 27th day of December 2013, after consideration of Defendants' Motion for Summary Judgment [ECF No. 58] and Brief in Support [ECF No. 59], Plaintiff's Brief in Opposition [ECF No. 65] and Defendants' Reply [ECF No. 67], it is HEREBY ORDERED as follows:

1. Defendants' Motion for Summary Judgment [ECF No. 58] is GRANTED IN PART and TEMPORARILY DENIED IN PART;

2. Defendants' Motion for Summary Judgment as to the application of the 2010 Ordinance is temporarily denied. Defendants are to file a renewed motion and brief in support of summary judgment as to this claim only by January 31, 2014; Plaintiff is to respond by February 28, 2014, and Defendants are to file a reply by March 14, 2014. No extensions will be granted;

3. Defendants' Motion for Summary Judgment as to the 21st Street Project is HEREBY GRANTED.

By the Court,

s/Robert C. Mitchell
ROBERT C. MITCHELL
United States Magistrate Judge


cc: all counsel of record via CM/ECF electronic filing