IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CITIZENS FOR PENNSYLVANIA'S )
FUTURE, )
         Plaintiff, )
          )
   vs. )
          )   Civil Action No. 12-943
THE PITTSBURGH WATER AND )
SEWER AUTHORITY, )
CITY OF PITTSBURGH and )
THE BUNCHER COMPANY, )
         Defendants. )

## MEMORANDUM OPINION

ROBERT C. MITCHELL, United States Magistrate Judge.

### I. INTRODUCTION

Presently for disposition is the Defendants', Pittsburgh Water and Sewer Authority's ("PWSA") and the City of Pittsburgh's (the "City"), Renewed Motion for Summary Judgment [ECF No. 71]. For the following reasons, the Defendants' motion is granted in part and denied in part.[1]

### II. BACKGROUND

Defendants have previously moved for summary judgment on the basis argued herein, however because of the lack of legal authority in both parties' briefs justifying the applicability of the 2010 Ordinance, this court temporarily denied summary judgment, and permitted the

---

[1] All parties have consented to jurisdiction before a United States Magistrate Judge; therefore, the Court has authority to decide dispositive motions, and to eventually enter final judgment. *See* 28 U.S.C. § 636 et seq.; Consent to Trial/Jurisdiction by United States Magistrate Judge by City of Pittsburgh [ECF No. 19]; Consent to Trial/Jurisdiction by United States Magistrate Judge by Citizens for Pennsylvania's Future [ECF No. 18]; Consent to Trial/Jurisdiction by United States Magistrate Judge by Pittsburgh Water & Sewer Authority [ECF No. 17].

1

parties to re-brief the issue. Therefore, because the motion before the court is a renewed motion for summary judgment, this court will only discuss the facts necessary for the disposition of the renewed motion.

The instant action is a citizen suit brought by Plaintiff, Citizens for Pennsylvania's Future ("PennFuture") and against Defendants for alleged violations of Section 505 of the Federal Water Pollution Control Act ("Clean Water Act" or "CWA"), 33 U.S.C. § 1365 and Section 601 of the Pennsylvania Clean Streams Law ("Clean Streams Law"), 35 P.S. § 691.601. Plaintiff generally argues that Defendants failed to enforce ordinances enacted pursuant to those laws in connection with discharge of storm water from a municipal separate storm sewer system to the Allegheny River.

In September 2004, the Pennsylvania Department of Environmental Protection ("DEP") issued the City and the PWSA a National Pollutant Discharge Elimination System ("NPDES") Permit for stormwater discharges from small municipal separate storm sewer systems (MS4s). This permit authorized the Defendants to discharge stormwater from their MS4s into the Monongahela, Allegheny and Ohio Rivers. The permit required that Defendants "implement a stormwater management program approved by [the DEP] . . . to reduce the discharge of pollutants from its [MS4s] to the maximum extent practicable . . . with the goal of protecting water quality and satisfying the appropriate water quality requirements of the federal Clean Water Act." NPDES Permit No. PAI136133 [ECF No. 1-3] at 4.

Under the NPDES Permit's terms, the City and PWSA could either adopt the DEP's model stormwater management program, or develop its own stormwater management program, provided such program was approved by the DEP. The City and PWSA decided to develop its own stormwater management program that was subsequently approved by the DEP.

2

Further, the permit required that the City and PWSA enact certain ordinances to fulfill the NPDES permit obligations. Specifically, the permit required that ordinances be enacted to address (1) illicit discharge detection and elimination; (2) construction site runoff control; and (3) post-construction stormwater management in new development and redevelopment. *Id*. The specific language of the NPDES Permit was as follows:

> **Illicit Discharge Detection Elimination**
> Implement and enforce a program to detect and eliminate illicit discharges into the MS4:
> . . .
>
> • Enact an ordinance prohibiting non-stormwater discharges into the MS4;
> • Implement appropriate enforcement procedures and actions for the ordinance . . .
>
> **Construction Site Runoff Control**
> Implement and enforce a program to reduce pollution in any stormwater runoff to the MS4 from construction activities that result in a land disturbance of greater than or equal to one acre, including projects less than one acre that are part of a larger common plan of development or sale that equals one acre or more:
>
> • Enact an ordinance to require erosion and sediment controls, as well as sanctions to ensure compliance[.] . . .
>
> **Post-Construction Stormwater Management in New Development and Redevelopment**
> Implement and enforce a program to reduce pollution in any stormwater runoff to the MS4 from new development and redevelopment projects that result in a land disturbance of greater than or equal to one acre, including projects less than one acre that are part of a larger common plan of development or sale that equals one acre or more:
> . . .
>
> • Use an ordinance to address post-construction runoff from new development and redevelopment projects[.]

*Id*. Additionally, the NPDES permit set forth additional conditions to which the permittees were subject to including a "continuing responsibility" clause. It provided: "No condition of the

permit releases the permittee from any responsibility or requirements under other federal or Pennsylvania environmental statutes or regulations or local ordinances." *Id*.

In 2007, the City enacted certain ordinances to implement a stormwater management program that complied with the NPDES Permit. Defs.' Statement of Material Facts [ECF No. 60] at ¶ 6; Pl.'s Appendix [ECF No. 69] at 65 (copy of City of Pittsburgh Zoning Code ("2007 City Code") § 1001.04(b) (2007)). The 2007 Ordinance enacted by the City differed from the DEP's model ordinance in some respects in that it imposed greater restrictions than the DEP's model ordinance. First, the City's ordinance contained a definition of "Green Infrastructure" and required its use at developments to control stormwater wherever "applicable and feasible." 2007 City §§ 1003.01(gg); 1003.06(a)(2)(J).[2] The DEP model ordinance had no such requirement. Second, both the 2007 City ordinance and the DEP model ordinance described "low impact development practices" which promote the use of natural hydrologic conditions in development designs to minimize post-development runoff rates and volume rather than using the traditional approach of removing runoff from sites as quickly as possible. While the DEP model ordinance "encouraged" the use of low impact development practices, the City's enacted ordinance "required" their use in site design "whenever practical" and further required that a qualified professional certify any claim that low impact development practices were not practical. 2007 City Code § 1003.04(b)(4).

In 2010, the 2007 Ordinance was amended to "provide more protective stormwater volume reduction standards and low impact development . . . strategies for planning and construction of" publically funded development and redevelopment projects. Pl.'s Appendix

---

[2] The term "Green Infrastructure" is defined as "[t]he use of natural systems to help absorb, infiltrate, evaporate or re-use stormwater runoff, including but not limited to rain barrels and cisterns, roofs covered with vegetation and plantings, tree boxes, rain gardens and pocket wetlands." *See* 2007 City Code § 1003.01(gg).

4

[ECF No. 69 at 107] (copy of City of Pittsburgh Zoning Code ("2010 City Code") §§ 1003.01(gg) and 1003.06(a)(2)(J) (2010)). This amendment imposed greater restrictions by requiring the use of low impact development practices and green infrastructure on publically funded development and redevelopment projects to the "maximum extent technically feasible," as opposed to "whenever practical" under the 2007 Ordinance. *Id*. Further, to substantiate a claim that the use of low impact development practices was infeasible, the developer had to provide the opinion of a qualified professional and incorporate that opinion into the stormwater site management plan. *Id*. Further, the reviewing body[3] had to approve of the demonstration of technical infeasibility and without such approval, the developer had to incorporate the low impact development practices to the maximum extent technically feasible. 2010 City Code § 1003.04A(b)(4).

At some time after Defendants acquired their NPDES permit, the Buncher Company ("Buncher") was awarded a government grant to redevelop an area of the City known as the "Strip District." According to Plaintiff, the City's ordinance enacted pursuant to the NPDES Permit required that Buncher submit a stormwater management site plan for the Strip District redevelopment project, and Buncher failed to do so.

On April 11, 2012, Plaintiff sent the Defendants a Notice of Intent to Sue for Violations of the Federal Clean Water Act and the Pennsylvania Clean Streams Law. The letter provided in pertinent part:

> This letter provides notice that Citizens for Pennsylvania's Future ("PennFuture") intends to file a citizen suit against the Pittsburgh Water & Sewer Authority ("PWSA") and the City of Pittsburgh ("the

---

[3] The "Review Body" is defined as "[t]he entity (City Counsel, Planning Commission, Zoning Board of Adjustment, Zoning Administrator, Planning Director, department head or Code Official) that is authorized to approve or deny or to recommend approval or denial of an application, plan or permit required under this Chapter." 2010 City Code § 1003.01(aaa) [ECF No. 59 at 112].

5

> City") for violations of the Federal Clean Water Act, 33 U.S.C. §§ 1251-1387, and the Pennsylvania Clean Streams Law, 35 P.S. §§ 691.1-691.1001. These violations arise from the continuing failure of PWSA and the City to enforce certain ordinances against The Buncher Company that PWSA and the City are required to enforce pursuant to the conditions of their NPDES Individual Permit for Stormwater Discharges from Small Municipal Separate Storm Sewer Systems ("MS4s").
>
> . . .
>
> PennFuture provides this notice pursuant to 33 U.S.C. § 1365(b)(1)(A), 40 C.F.R. §§ 135.1-153.3, and 35 P.S. § 691.601(e).
>
> . . .
>
> The Buncher Company has commenced the construction of a new public roadway, which has been described as a "spine road" near the Allegheny River waterfront between 11th Street and Veterans Bridge in the "Strip District" of Pittsburgh ("the site"). . . . The public roadway currently being constructed is part of a larger redevelopment project of the Strip District that has received a $15 million Redevelopment Assistance Capital Program Grant from Governor Corbett. . . .
>
> Upon information and belief, The Buncher Company did not submit a SWM [stormwater management] Site Plan to PWSA or the City for the roadway project. Further, upon information and belief, The Buncher Company is not complying with the stormwater management standards applicable to publicly funded development and publicly funded redevelopment in its development of the roadway project.
>
> By not requiring The Buncher Company to submit a SWM Site Plan for the roadway project and by not requiring The Buncher Company to comply with the stormwater management development of the roadway project, PWSA and the City are not enforcing the ordinances that they are required to enforce under PAI136133 and therefore are in continuing violation of the permit.

PennFuture Notice Letter [ECF No. 1-2]. After this notice was issued, Buncher submitted a stormwater management plan to the Defendants for the Eleventh Street Project. Upon receipt of the plan, the City issued consistency letters stating that Buncher's stormwater management plans conformed to the regulations set forth in the City Code.

Plaintiff alleges that although Buncher submitted a stormwater management plan and it

was approved by the City, Buncher's stormwater management plans do not comply with the City ordinance enacted pursuant to the permit and the City should not have issued consistency letters for the Eleventh Street project. Plaintiff alleges that the plans violate the 2010 Ordinance because it fails to address the management and mitigation of stormwater impacts. More specifically, the disagreement between Plaintiff and Defendants relates to each party's expert's interpretation of the 2010 Ordinance. Plaintiff's expert states that each part of the Eleventh Street Project must meet the 2010 LID requirements, while Defendants' expert concludes that the project as a whole manages the required amount of water. Defs.' Br. in Supp. of Mot. for Summ. J. [ECF No. 75] at 5, n. 4. The court notes that this argument was not brought as grounds for summary judgment, but rather as an explanatory footnote by Defendants in their briefing.

Defendants move for summary judgment on the basis that the 2010 Ordinance upon which Plaintiff rely is not incorporated into, a condition of or requirement for compliance of the Permit at issue in this case.

Therefore, the discrete issue to determine here is whether an alleged violation of the 2010 Ordinance enacted pursuant to the NPDES permit equates to a violation of the NPDES permit itself, and thus defies the CWA. For the reasons that follow, the court finds that it does not, and accordingly Defendants' motion for summary judgment will be granted in this regard.

### III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A moving party is entitled to summary judgment if he demonstrates that "the nonmoving party has failed to make a sufficient showing of an essential element of [his] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party

bears the burden of adducing palpable evidence "establishing that there is a genuine factual dispute for trial" and may not merely rely upon "bare assertions or conclusory allegations" to survive summary judgment. *Hogan v. Twp. of Haddon*, 278 Fed.App'x 98, 101 (3d Cir. 2008) (citing *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982)). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied [only] when there is a genuine issue of material fact." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). "Speculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact." *Boykins v. Lucent Techs., Inc.*, 78 F.Supp.2d 402, 407 (E.D.Pa. 2000). The court should draw inferences "in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) *cert. denied* 507 U.S. 912 (1993). Here, the parties agree that no genuine issue of material fact exists. Therefore, the court will determine on the fully developed record whether, as a matter of law, Defendants are entitled to judgment in their favor.

## IV. ANALYSIS

### A. Clean Water Act

Congress enacted the Clean Water Act in 1972 to "restore and maintain the chemical, physical and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). Either the Administrator of the Environmental Protection Agency ("EPA") or states authorized to do so may issue National Pollution Discharge Elimination System ("NPDES") permits. *See* section 402, 33 U.S.C. § 1342; *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs*. (TOC) Inc., 528 U.S. 167, 174 (2000). The NPDES permitting authority has "wide discretion concerning the terms of

a permit." *Natural Resources Defense Council, Inc. v. County of Los Angeles*, 725 F.3d 1194, 1205, n. 16 (9th Cir. 2013). Under the CWA's plain statutory language, the permitting authority may prescribe whatever conditions for the NPDES permits it deems fit to "assure compliance with the requirements" of 33 U.S.C. § 1342(a)(1), "including conditions on data and information collection, reporting, and such other requirements as he deems appropriate." 33 U.S.C. § 1342(a)(1).

Generally, NPDES permits "impose limitations on the discharge of pollutants, and establish related monitoring and reporting requirements, in order to improve the cleanliness and safety of the Nation's waters." *Id*. A permittee's non-compliance with an NPDES permit qualifies as a violation of the CWA. 33 U.S.C. § 1342(h). Specifically, section 505 of the CWA authorizes a citizen suit against any person alleged to be in violation of "an effluent standard or limitation under this chapter[.]" including "a permit or condition thereof issued under section 1342 of this title." 33 U.S.C. §§ 1365(a), (f).

Here, because Plaintiff is alleging a violation of the permit's terms, and not that Defendants have discharged pollutants in excess of levels specified in the permit, the court must interpret the terms of the permit.

The interpretation of a NPDES permit condition is inherently "a question of law for the courts to decide." *American Canoe Ass'n Inc. v. District of Columbia Water and Sewer Authority*, 306 F.Supp.2d 30, 41 (D.D.C. 2004) (citing *Natural Resources Def. Council, Inc. v. Texaco Refining & Mktg., Inc.*, 20 F.Supp.2d 700, 710 (D.Del. 1998)). It is "manifestly erroneous" to permit a jury to determine the meaning of an NPDES permit. *United States v. Weitzenhoff*, 35 F.3d 1275, 1268-87 (9th Cir. 1993).

Although the statutory scheme surrounding the NPDES permitting requirements can be

quite "complex, a court's task in interpreting and enforcing an NPDES permit is not – NPDES permits are treated like any other contract." *Natural Resources Defense Council, Inc. v. Cnty. of Los Angeles*, 725 F.3d 1194, 1204 (9th Cir. 2013). "If the language of the permit, considered in light of the structure of the permit as a whole, 'is plain and capable of legal construction, the language alone must determine the permit's meaning.'" *Natural Resources Defense Council, Inc.*, 725 F.3d at 1204-05 (quoting *Piney Run Pres. Ass'n v. Cnty. Com'rs of Carroll Cnty. Maryland*, 268 F.3d 255, 270 (4th Cir. 2001)).

Just as with contract law, NPDES permit terms "are to be given their ordinary meaning[.]" *Natural Resources Defense Council*, 725 F.3d at 1205. Where the NPDES permit terms are "clear, the intent of the parties must be ascertained from the [permit] itself[,]" and the permit's language controls. *Id.* *See also Piney Run Pres. Ass'n*, 268 F.3d at 269 ("In analyzing a provision of an NPDES permit, we review the district court's interpretation in the same manner as we would contracts or other legal documents."); *Northwest Environmental Advocates v. City of Portland*, 56 F.3d 979, 982 (9th Cir. 1995) (same); *American Canoe Ass'n, Inc.*, 306 F.Supp.2d at 42 (same).

Under the CWA, the plaintiff has the burden of proving that the defendants violated a provision, or a condition of the NPDES permit. Here, the plaintiff does not argue that permit has been violated, but rather that the ordinances imposed by the permit have been violated. Plaintiff argues that because the permit sets forth a condition that defendants implement and enforce certain ordinances, that the failure to enforce the ordinances results in a violation of the permit, and therefore a violation of the CWA.

Looking at the plain language of the NPDES permit, as is required, it in no way imposes a condition that if the ordinances are violated that this results in a violation of the permit itself.

10

Nowhere in the permit does it explicitly say that it is a violation for a failure to enforce an ordinance enacted pursuant to the permit's terms. We will not implicitly read this requirement into the permit, which sets forth various ways in which the permit is violated or the action or inaction of the permittee would impose penalties on the permittee. Although the permit states "Any stormwater management program approved by the DEP becomes part of the applicant's Authorization to Discharge[,] under this permit" it does not say that a violation of such an ordinance enacted thereunder constitutes a violation of the permit. It is especially telling that neither party can point this court to case law standing for the proposition that failure to enforce an ordinance enacted pursuant to the permit constitutes a violation of the permit and as a result, the CWA. We decline to find such a requirement. To bring the cause of action that plaintiff sets forth, the permit would have to explicitly condition the enforcement of the ordinance as a violation of the permit. The statute gives broad discretion to the permitting authority to impose whatever conditions it deems fit to adhere to the CWA, and the permit here is silent. The court will not read into the permit a condition that the authority did not explicitly set forth in the first instance. Also, while the permit provides that its permittees have a continuing responsibility to adhere to any and all requirements under federal or Pennsylvania environmental statutes or regulation or local ordinances, it does not provide that the failure to do so constitutes a violation of the permit or imposes any other sanctions on the permittee. Accordingly, Defendants' motion for summary judgment will be granted in this respect.

It must also be emphasized that neither party has raised any jurisdictional issues which the court finds to be quite appropriate to discuss, particularly in light of the nature of the case. Namely, it is questionable whether this court has any jurisdiction to adjudicate these claims based upon the plaintiff's standing. However, because these issues require a specific set of

factual development which has not been performed or set forth before this court, no party has raised these issues in any manner before, and this court has given the parties leave to refile their motions for summary judgment due to a lack of authority in the original briefs, the court will not discuss such issues here.

### B. *Pennsylvania Clean Streams Law*

Having granted summary judgment on Plaintiff's federal claim, all claims which provide the court with original jurisdiction have been disposed of. The only claim that remains is Count II of the Complaint alleging a violation of the Pennsylvania Clean Streams Law, over which the court had supplemental jurisdiction over pursuant to 28 U.S.C. § 1367.

The court will not exercise jurisdiction over the purported violations of the Pennsylvania Clean Streams law. A district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1376(c)(3). A court's "decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). Where, before trial, all federal claims have been dismissed, "the district court must decline to decide the pendent state law claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000).

No such justification exists for the court to hear the remaining violation of the Pennsylvania Clean Stream Law. The parties have not briefed this issue under Pennsylvania law, this court has not determined the validity of such a claim, the discovery conducted at this point can be used in a state court proceeding, and the claim involves inherent state law interests (the Commonwealth's right to monitor and regulate its own waters) to which there are no

extraordinary circumstances to justify exercising supplemental jurisdiction over. Accordingly, the Court dismisses Plaintiff's state law claim for a violation of the Pennsylvania Clean Streams Law without prejudice to Plaintiff's right to assert that claim in state court.

## V. CONCLUSION

Based on the foregoing, Defendants' motion for summary judgment is granted in part and denied in part. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CITIZENS FOR PENNSYLVANIA'S FUTURE,<br>　　　　Plaintiff,<br><br>　vs.<br><br>THE PITTSBURGH WATER AND SEWER AUTHORITY, CITY OF PITTSBURGH and THE BUNCHER COMPANY,<br>　　　　Defendants. | Civil Action No. 12-943 |

## O R D E R

AND NOW, this 7th day of April 2014, after consideration of Defendants' Renewed Motion for Summary Judgment [ECF No. 71] and Brief in Support [ECF No. 72], Plaintiff's Brief in Opposition [ECF No. 74] and Defendants' Reply [ECF No. 75], it is HEREBY ORDERED that Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART** as follows:

Defendants' Renewed Motion for Summary Judgment is **GRANTED** as to Plaintiff's Clean Water Act violation claim asserted in Count I of the Complaint and **DENIED** in all other respects;

Plaintiff's Pennsylvania's Clean Streams Law violation asserted in Count II of the Complaint is **DISMISSED WITHOUT PREJUDICE**.

　　　　　　　　　　　　　　　　　　By the Court,

　　　　　　　　　　　　　　　　　　s/Robert C. Mitchell
　　　　　　　　　　　　　　　　　　ROBERT C. MITCHELL
　　　　　　　　　　　　　　　　　　United States Magistrate Judge

cc:	Heather M. Langeland *for Citizens for Pennsylvania's Future*

Mark F. Nowak *for Pittsburgh Water & Sewer Authority*
Danny P. Cerrone *for Pittsburgh Water & Sewer Authority*
David G. Reis *for Pittsburgh Water & Sewer Authority*

Michael E. Kennedy *for the City of Pittsburgh*
Daniel D. Regan *for the City of Pittsburgh*

James G. McLean *for the Buncher Company*
Joseph F. McDonough *for the Buncher Company*